ORIGINAL

FILED
NOV 30 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Mickey Management, L.P., by and through Marilyn Sands, a Notice Partner,

Plaintiff,

v.

United States of America,

Defendant.

Case No. 06-810 T

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

Mickey Management, L.P. ("Mickey"), by and through Marilyn Sands, a Notice Partner in Mickey, files this Complaint pursuant to 26 U.S.C. § 6226 and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to Mickey with respect to Mickey's Forms 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002 (the "Mickey FPAA"). The Mickey FPAA is attached as Exhibit A. Plaintiff alleges as follows:

## I. THE PARTIES

1. Mickey is a limited partnership organized under the laws of the State of Delaware. It has a principal place of business at 370 Woodcliff Drive, Third Floor, Fairport, New York 14450, and its partnership identifying number is 04-3606051.

RECEIVED
OVER THE COUNTER
THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

2. During 2002, the Marilyn Sands was a 99 % limited partner in Mickey. Marilyn Sands has a principal business address at 370 Woodcliff Drive, Third Floor, Fairport, New York 14450 and her taxpayer identification number is XXX-XX-7444.[1]

3. The 1% general and Tax Matters Partner in Mickey was at all times Mickey Management Inc. Mickey Management Inc. has a principal place of business at 370 Woodcliff Drive, Third Floor, Fairport, New York 14450, and its taxpayer identification number is 04-3606044.

4. Mickey Management Inc. was 100% owned by Marilyn Sands in 2002.

5. Alpha I, L.P. ("Alpha") is a limited partnership organized under the laws of the State of Missouri. It has a principal place of business at 370 Woodcliff Drive, Third Floor, Fairport, New York 14450, and its partnership identifying number is 43-1946228. Marilyn Sands was a limited partner of Alpha.

6. Beta Partners, LLC ("Beta") was a limited liability company organized under the laws of the State of Missouri. It had a principal place of business at 370 Woodcliff Drive, Third Floor, Fairport, New York 14450, and its partnership identifying number was 43-1946833.

7. The defendant is the United States of America.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS App. F Rules 1 and 2

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

9. Mickey timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002 with the Internal Revenue Service at Ogden, Utah.

10. The Mickey FPAA was issued on August 8, 2006 and was issued by the IRS Office in Chicago, IL.

[1] Only the last four digits of the social security number is provided pursuant to General Order No. 42A.

11. The Mickey FPAA was issued with respect to Mickey's taxable year ended December 31, 2002.

12. Pursuant to Internal Revenue Code of 1986, as amended (the "Code") Section 6226(e)(1), prior to the filing of this Complaint, Marilyn Sands deposited with the Internal Revenue Service the total amount of $606,884.00, which includes the amount by which her tax liability would be increased if the treatment of the "partnership items" on Mickey's tax return was made consistent with the treatment of "partnership items" on the Mickey return, as adjusted by the FPAA issued to Mickey. A copy of the paper work and check associated with this deposit is attached as Exhibit B.

13. The deposits were made on November 28, 2006 and were sent to IRS Revenue Agent Peter Brokus.

14. Marilyn Sands is a "notice partner" in Mickey within the meaning of Code Section 6231(a)(8).

15. None of Mickey's partnership items with respect to Marilyn Sands have become non-partnership items by reasons of any event described in Code Section 6231(b).

16. The Tax Matters Partner has not filed a complaint for readjustment of partnership items within the period specified in Code Section 6226(a).

17. Mickey has satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTIONS

18. On or about December 11, 2001, Robert Sands, Richard Sands, Marilyn Sands, Andrew Stern, the Residual U/A 7C of the Marvin Sands Master Trust (the "Marvin Sands Master Trust"), the Trust FBO Abigail Stern U/A Fifth G (the "Abigail Trust,") and the Trust FBO Zachary Stern U/A Fifth G (the "Zachary Trust") each borrowed U.S. Treasury securities

from UBS PaineWebber, Inc. ("PaineWebber"), and sold the securities on the open market (the "Short Sales"). The net proceeds of the Short Sales were transferred to their respective brokerage accounts at PaineWebber.

19. On or about December 13, 2001, the Abigail Trust assigned all of the assets in its PaineWebber brokerage account to CWC – I Partnership ("CWC"), and delegated to CWC its responsibility to cover the short sale.

20. On or about December 13, 2001, the Zachary Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

21. On December 17, 2001, CWC contributed the following to Alpha in exchange for a 12.949% limited partnership interest: (a) the assets in the PaineWebber brokerage accounts that it received from the Zachary Trust and the Abigail Trust (and the requirement to "cover" the short sales); and (b) $160,766.20.

22. On December 17, 2001, Robert Sands contributed the following to Alpha in exchange for a 21.401% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $265,614.43.

23. On December 17, 2001, Richard Sands contributed the following to Alpha in exchange for a 18.022% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $223,675.31.

24. On December 17, 2001, Marilyn Sands contributed the following to Alpha in exchange for a 14.641% limited partnership interest: (a) the assets in her PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $181,736.19.

25. On December 17, 2001, Andrew Stern contributed the following to Alpha in exchange for a 5.857% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $72,694.48.

26. On December 17, 2001, the Marvin Sands Master Trust contributed the following to Alpha in exchange for a 27.030% limited partnership interest: (a) the assets in its PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $335,512.97.

27. On or about December 20, 2001, R,R,M & C Management Corporation contributed $2,582 to Alpha for its .1% general partnership interest.

28. On or about December 17, 2001, Alpha purchased 67,525 shares of stock in Corning, Inc. and 33,400 shares of stock in Yahoo, Inc.

29. On December 20, 2001, Alpha contributed the Yahoo and Corning shares and $45,637,127.17 (and the requirement to "cover" the Short Sales) to Beta for a 99.0043% membership interest. Gloria Robinson ("Robinson") had earlier that month contributed $25,000 to Beta in exchange for her .9957% membership interest.

30. On December 26, 2001, Beta closed the Short Sales and recognized a net gain of $90,018.

31. On December 27, 2001, Alpha purchased Robinson's interest in Beta, which had the effect terminating Beta pursuant to Code Section 708(b)(1)(B).

32. During 2001 and 2002, Alpha transferred 52,450 of the Corning shares and 25,042 of the Yahoo shares in varying amounts to various partners.

33. On December 23, 2001 Marilyn Sands contributed 2,300 shares of Yahoo that were distributed to her by Alpha to Mickey.

34. On December 23, 2001 Marilyn Sands contributed 4,600 shares of Corning that were distributed to her by Alpha to Mickey.

35. On December 18, 2002, Mickey sold the 4,600 shares of Corning for a total sales price of $17,115. Mickey's tax basis in 4,600 shares of Corning was $1,516,573. The sale resulted in a short-term capital loss of $1,499,458.

36. On December 18, 2002, Mickey sold the 2,300 shares of Yahoo for a total sales price of $38,422. Mickey's tax basis in 2,300 shares of Yahoo was $1,599,703. The sale resulted in a short-term capital loss of $1,561,281.

## IV. THE SERVICE'S POSITION

37. On August 8, 2006, the Service issued an FPAA to Mickey, adjusting how Mickey reported certain items on its Form 1065 for the taxable period ending December 31, 2002. The primary adjustment made by the Service in the Mickey FPAA is to increase Mickey's portfolio income from ($2,964,879) to $69,540. The adjustment of Mickey's portfolio income made by the Service in the Mickey FPAA is a result of the Service reducing Mickey's basis in the shares of Corning and Yahoo that it sold on December 18, 2002 by a total of $3,034,419. The Mickey FPAA also adjusts the capital contributed to Mickey from $25,366,103 to $18,880,652. The Mickey FPAA also asserts a 40% accuracy-related penalty against Mickey or, alternatively a 20% accuracy-related penalty.

38. On December 22, 2005, the Service issued an FPAA to Alpha, adjusting how Alpha reported certain items on its Form 1065 for the taxable periods ending December 31, 2001 and December 31, 2002 (the "Alpha FPAA").

39. Also on December 22, 2005, the Service issued an FPAA to Beta. The Service primarily asserts that for a variety of reasons, Beta's liabilities should be increased by

$44,293,087 (i.e., the proceeds of the Short Sales). The Beta FPAA also asserts a 40% accuracy-related penalty against Beta or, alternatively a 20% accuracy-related penalty.

40. This complaint challenges all of the adjustments made by the Service in the Mickey FPAA. Separate complaints have been filed in this Court to contest the adjustments made by the Service in the Alpha FPAA and Beta FPAA.

## V. THE SERVICE'S ERRORS IN THE ALPHA FPAA

41. The Service erred with respect to each and every determination and alternative position in the Mickey FPAA.

42. None of the items the Service seeks to adjust are partnership items. As such, the Service cannot make the proposed adjustments in an FPAA.

43. The Service erred in reducing the basis claimed by Mickey in the Yahoo and Corning stock sold by $3,034,419. The Service erred, therefore, in, concluding that Mickey has net short-term capital gain of $69,540 instead of a net short-term capital loss of $(2,964,879) as was reported on Mickey's return. With respect to the reasons offered by the Service for this adjustment, the Service erred:

i. in determining that Mickey failed to establish that Mickey's adjusted basis under Code Section 1001 was more than the amount allowed by the Mickey FPAA;

ii. in determining that under Code Section 732 Mickey failed to establish that it obtained an adjusted basis of more than the amount allowed in the Yahoo and Corning stock when it was contributed to it by Marilyn Sands;

iii. in determining that under Code Section 703 and 704(b) there is an increase in Mickey's short-term capital gain for the taxable year 2002 that is allocable to Mickey's partners.

44. The Service erred by determining that none of the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1).

45. The Service erred in asserting any accuracy-related penalty provided by Code Section 6662.

## VI. MICKEY'S CORRECT TREATMENT OF TAX ITEMS

46. Mickey and its partners properly determined all items of tax basis, income, losses, deductions, and credits of Mickey for the taxable year 2002.

47. Mickey and its partners properly determined and reported Mickey's adjusted basis in the Yahoo and Corning stock that was contributed to Mickey in 2001 and sold in 2002.

48. Mickey and its partners properly determined and reported a net short-term capital loss of $(2,964,879) for 2002.

49. Mickey and its partners have adequately established and have furthermore properly reported Mickey's adjusted basis in the Yahoo and Corning stock under Code Section 1012 for purposes of determining gain or loss on the sale under Code Section 1001.

50. Mickey and its partners have adequately established that Mickey's carryover basis in the Corning stock under Code Section 732 was $1,516,573 at the time the stock was contributed to Mickey.

51. Mickey and its partners have adequately established that Mickey's carryover basis in the Yahoo stock under Code Section 732 was $1,599,703 at the time the stock was contributed to Mickey.

52. Mickey and its partners properly computed their amounts at risk.

53. Alternatively, to the extent that Mickey and its partners did not properly compute the amounts at risk, the "at risk" rules of Code Section 465 could only be used to disallow the losses claimed by Mickey, but such rules would not require Mickey or its partners to recognize any gain.

54. In every other respect, the federal tax consequences of the transactions at issue in this case are as reported by Mickey and its partners on their federal tax returns.

55. Mickey and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

56. Mickey and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

57. The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

58. In the alternative, even if the Transactions do constitute a tax shelter, Mickey and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Mickey and its partners

reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

59. Mickey and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

## VII. BURDEN OF PROOF

60. The Government has the burden of proof under Code Section 7491.

## VIII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that none of the adjustments made by the Service in the Mickey FPAA relate to partnership items and find the Mickey FPAA invalid;

2. Determine that the adjustments made by the Service in the Mickey FPAA are factually and/or legally incorrect and are invalid;

3. Determine that the penalties asserted by the Service in the Mickey FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

4. Determine that the deposit paid by Marilyn Sands should be refunded, together with interest thereon; and

5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated: November 30, 2006

Respectfully submitted,

Lewis S. Wiener
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004-2415
Tel: (202) 383-0100
Fax: (202) 637-3593
Attorney for Plaintiff

OF COUNSEL:
N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 853-8000
Fax: (404) 853-8806

Notice 2000-44 Case

Department of the Treasury

Internal Revenue Service
230 S. Dearborn Stop 4031 CHI
Attn: Brenda Williams
Chicago, IL 60604

Refer To: Brenda Williams

Partner Identifying Number: [redacted]

Name of Partnership: Mickey Management, LP

Partnership Identifying Number: 04-3606051

Tax Year Ended: December 31, 2002

Date: AUG 8 2006

Date FPAA Mailed to the Tax Matters Partner: AUG 8 2006

Marilyn Sands
[redacted]
Aventura, FL 33180-3431

Person to Contact: Brenda Williams
Employee Number: 36-08840

Contact Telephone Number: 312-566-2449 (not a toll free number)

Contact Hours: 8:00 AM to 4:30 PM

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and the tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership".*

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court can't consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court of the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership

items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Brenda Williams

for Tim Conley,
Technical Services
Territory Manager

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

| Form 870-PT (08/2004) | Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts | REFER TO: Brenda Williams |
|---|---|---|
| Taxpayer(s) name(s), address and ZIP code:<br>Marilyn Sands<br>[redacted]<br>Aventura, FL 33180-3431<br><br>Taxpayer Identifying Number: [redacted] | Name of Partnership:<br>Mickey Management, Inc.<br>Taxpayer Identifying Number:<br>04-3606051<br>Name of Tax Matters Partner:<br>Mickey Management, Inc. | Tax Year(s) Ended:<br>12/31/2002 |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of taxpayer | Date Signed |
| Signature of taxpayer | Date Signed |
| By (Signature and title) | Date Signed |

| | | |
|---|---|---|
| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
| | Office | Title |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the waiver must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

Department of the Treasury - Internal Revenue Service

# AGREEMENT FOR PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATION AS TO PENALTIES, ADDITIONS TO TAX, AND ADDITIONAL AMOUNTS

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: Mickey Management, LP<br>TAXPAYER IDENTIFYING NUMBER: 04-3606051 | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | 12/31/2002 | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME: | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| Total Adjustments to Ordinary Income | | | |
| Other Adjustments | | | |
| a. Portfolio income (loss) interest | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 45,596.00 | | |
| (3) Corrected | 45,596.00 | | |
| b. Portfolio income (loss) dividends | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 12,296.00 | | |
| (3) Corrected | 12,296.00 | | |

**Remarks:**

It is determined that the accuracy-related penalties provided by IRC 6662(a) and 6662(h) apply to the entire amount of any underpayment of tax attributable to adjustments of the partnership items of Mickey Management, LP for the taxable year ending December 31, 2002. The accompanying Explanations of Adjustments to Partnership Items and Partnership-level Determinations are hereby incorporated by reference.

# Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: Mickey Management, LP

Taxpayer Identifying Number: 04-3606051

| | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| c. Portfolio income (loss) royalties | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 101.00 | | |
| (3) Corrected | 101.00 | | |
| d. Portfolio income (loss) net short-term gain (loss) | | | |
| (1) Adjustment | 3,034,419.00 | | |
| (2) As reported | (2,964,879.00) | | |
| (3) Corrected | 69,540.00 | | |
| e. Portfolio income net long-term gain (loss) total | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 35,767.00 | | |
| (3) Corrected | 35,767.00 | | |
| f. Other portfolio income (loss) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (852.00) | | |
| (3) Corrected | (852.00) | | |
| g. Other income (loss) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 1,819.00 | | |
| (3) Corrected | 1,819.00 | | |
| h. Deductions related to portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 94,108.00 | | |
| (3) Corrected | 94,108.00 | | |
| i. Other deductions | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 8,972.00 | | |
| (3) Corrected | 8,972.00 | | |
| j. Investment income included in portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 57,141.00 | | |
| (3) Corrected | 57,141.00 | | |
| k. Other credits (not related to rental activities) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 10.00 | | |
| (3) Corrected | 10.00 | | |
| l. Adj./tax pref. items depreciation in serv. after 1986 | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 2.00 | | |
| (3) Corrected | 2.00 | | |

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: Mickey Management, LP

| Taxpayer Identifying Number: 04-3606051 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| m. Foreign taxes - gross income from all sources | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 160,850.00 | | |
| (3) Corrected | 160,850.00 | | |
| n. Gross income sourced at partner level | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 41,385.00 | | |
| (3) Corrected | 41,385.00 | | |
| o. Foreign gross income sourced at partnership - passive | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 12,683.00 | | |
| (3) Corrected | 12,683.00 | | |
| p. Deductions allocated/apportioned at partner level - interest | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 32,282.00 | | |
| (3) Corrected | 32,282.00 | | |
| q. Deductions allocated/apportioned at partner level - other | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 4,658.00 | | |
| (3) Corrected | 4,658.00 | | |
| r. Deductions allocated/apportioned at P/S level - passive | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 1,026.00 | | |
| (3) Corrected | 1,026.00 | | |
| s. Foreign taxes total foreign taxes paid / accrued | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 1,659.00 | | |
| (3) Corrected | 1,659.00 | | |
| t. Nondeductible expenses | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 562.00 | | |
| (3) Corrected | 562.00 | | |
| u. Capital Contributed, Schedule M-2, line 2 | | | |
| (1) Adjustment | 6,485,451.00 | | |
| (2) As reported | 25,366,103.00 | | |
| (3) Corrected | 18,880,652.00 | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

Notice 2000-44 Case

ATTACHMENT TO FORM 870-PT
EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS
AND PARTNERSHIP LEVEL DETERMINATIONS

| PARTNERSHIP | | TAXPAYER ID | TAXABLE YEAR |
|---|---|---|---|
| Mickey Management, LP. | | 43-3606051 | 12/31/2002 |
| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
| I CAPITAL GAINS AND LOSSES | $3,034,419 | $(2,964,879) | $69,540 |

I CAPITAL GAINS AND LOSSES

It is determined that the adjusted basis of the Partnership in shares of the common stock of Yahoo, Inc. (the "Yahoo Shares") and shares of the common stock of Corning, Inc. (the "Corning Shares"), sold by the Partnership is $17.95 per share and $8.82 per share, respectively, instead of $695.53 and $329.68 per share as reported on the Partnership's return. Accordingly, the Partnership has a net short-term capital gain of $69,540 for the taxable year 2002 instead of a net short-term capital loss of $2,964,879 as reported on the Partnership's return.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 Under I.R.C. 1001, you failed to establish that, for purposes of determining gain or loss, the Partnership's adjusted bases in the Yahoo Shares and the Corning Shares are more than the respective amounts allowed.

2 Under I.R.C. 732, you failed to establish that the Partnership obtained adjusted bases in the Yahoo Shares and the Corning Shares in excess of the respective amounts allowed when contributed by Marilyn Sands.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under I.R.C. §§ 703 and 704(b), the increased amount of the Partnership's short-term capital gain for the taxable year 2002 is allocated among the partners in accordance with their respective percentage interests.

II I.R.C. § 465 AT RISK RULES

It is determined that none of the transactions of the Partnership increases the amount considered at-risk for an activity under I.R.C. § 465(b)(1).

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING.

1 Under I.R.C. § 465(b), none of the Partnership's transactions or activities increases the amount by which the partners are considered to be at risk for any activity.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under I.R.C. § 465(b), the amount for which a partner is considered to be at risk for an activity is not increased by any transactions with the Partnership.

III ACCURACY-RELATED PENALTIES

It is determined that the 40% accuracy-related penalty provided by I.R.C. § 6662 (h) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662(a) applies to the entire amount of any underpayment of tax attributable to the adjustments of partnership items of the Partnership for the taxable year 2002.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 The amount of any underpayment of tax is attributable to a gross valuation misstatement under I.R.C. § 6662(h).

2 Alternatively, the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under I.R.C. § 6662(e).

3 Alternatively, the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under I.R.C. §§ 6662(a), 6662(b)(1), and 6662(c).

4 Alternatively, the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under I.R.C. §§ 6662(a), 6662(b)(2), and 6662(d).

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under I.R.C. § 6221, penalties determined at the partnership level are applied to underpayments attributable to partnership items and affected items at the partner level subject to partner-level defenses that may be asserted in an action for refund after assessment and payment.

Sutherland
Asbill &
Brennan LLP
ATTORNEYS AT LAW

999 Peachtree Street, NE
Atlanta, GA 30309-3996
404.853.8000
fax 404.853.8806
www.sablaw.com

JOSEPH M. DEPEW
DIRECT LINE: 404.853.8009
E-mail: joe.depew@sablaw.com

November 28, 2006

VIA FEDEX

Peter J. Brokus
Internal Revenue Service
409 Lackawanna Ave.
Suite 600
Scranton, PA 18503-2065

Re: Marilyn Sands
SSN: [redacted]

Dear Mr. Brokus:

I am enclosing Merrill Lynch check number 988 from Marilyn Sands and made payable to the United States Treasury in the amount of $606,884 to be applied to Form 1040 for tax year ended December 31, 2002. This is the total amount of tax, in addition to the tax previously paid, that would be due from Ms. Sands by taking into account all of the adjustments made by the Notice of Final Partnership Administrative Adjustment ("FPAA") issued to Mickey Management, L.P. for 2002.

This tax payment takes into account all adjustments made by the FPAA issued to Mickey Management, LP as they relate to Ms. Sands, including all of the adjustments from flow-through entities that she held an interest in. The payment of tax is intended to satisfy the deposit requirements of Internal Revenue Code § 6226(e)(1).

If you have any questions, please give me a call (404) 853-8009 or Tom Cullinan (404) – 853-8075.

Sincerely,

Joseph M. DePew

JMD/lt
Enclosure

AO 1576459.1

RICHARD SANDS, ROBERT SANDS,
MARILYN SANDS TTEES
MARVIN SANDS GRANTR
C/O CANANDAIGUA BRANDS INC
[redacted]
FAIRPORT NY 14450

0988

DATE 11-27-06 25-80/440

PAY TO THE ORDER OF United States Treasury $ 606,884.00

Six hundred six thousand eight hundred eighty four and 00/100 --- DOLLARS

Merrill Lynch

BANK ONE

MEMO For Marilyn Sands

⑈000988⑈ [redacted]